IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SENECA INSURANCE COMPANY,
INC.

      Plaintiff,

v.                                          Civil Action No.  2:24-cv-203

BECK ROOFING CORPORATION,

      Defendant.

### MEMORANDUM ORDER

Pending before the Court are Defendant Beck Roofing Corporation's ("Beck") Motion for Summary Judgment, ECF No. 11, and Motion to Exclude Expert Testimony, ECF No. 29. For the reasons set forth below, the Court DENIES the Motion to Exclude Expert Testimony and GRANTS IN PART and DENIES IN PART the Motion for Summary Judgment.

### I.    BACKGROUND

This case arises from a building fire on the Virginia Beach oceanfront in July 2023. The day of the fire, Beck performed roofing work on the building, which was owned by Vakos Family Development Company, LLC.[1] Seneca Insurance Company, Inc. ("Seneca"), who insured the building, claims that Beck's negligence caused the fire. Seneca asserts that Beck either: (1) negligently used a torch to apply roofing material (i.e., negligently performed "hot work");[2] or (2) failed to properly secure the tank and torch it left on the roof for use the next day. Compl. ¶¶ 14–

---

[1]    The facts in this section are undisputed unless otherwise indicated.

[2]    The Virginia Statewide Fire Prevention Code ("Virginia Fire Code") defines "hot work" as including cutting, welding, brazing, and installing torch-applied roof systems. Virginia Fire Code § 202.

15, ECF No. 1. In deposition testimony, the Beck foreman ("Biggs") who was at the building that day stated that he did not do any hot work, and did not observe the other Beck employee present doing any hot work. Biggs Dep. at 95:14–22, ECF No. 23-1.[3] Biggs did admit that a Beck employee brought the propane tank and torch onto the roof, and connected them, to prepare for hot work the next day. *Id.* at 86–93. Matthew Vakos ("Vakos"), CEO of Vakos Family Development Company, testified in his deposition that he separately used a torch to braze copper refrigerant lines on the day of the fire in order to move a condenser unit in the area where Beck employees were working. Vakos Dep. at 40–58, ECF No. 23-4.

Seneca brings claims for both negligence and negligence per se against Beck. Seneca's negligence claim identifies seven purportedly negligent acts or omissions by Beck:[4] (1) "failure to maintain a fire safe condition in [Beck's] work area on the roof"; (2) "failure to take appropriate precautions to avoid igniting combustible material in and under the roof"; (3) "failure to properly operate the open-flame propane torch"; (4) "failure to post, utilize, and/or maintain a fire watch for an appropriate period of time and in the appropriate location(s) to observe the torched area after [Beck's] work was completed for the day"; (5) "failure to properly store or secure the portable propane tank and torch after completing its work for the day"; (6) "failure to properly inspect the work area prior to commencing work to ensure that it was fire safe"; and (7) "failure to move or protect fire hazards in the vicinity of the work area prior to commencing work." Compl. ¶¶ 23(a)–

---

[3] Citations to depositions in this Memorandum Order reference the original page numbers on the deposition transcripts, rather than the page numbers assigned by CM/ECF.

[4] Seneca's Complaint also alleged that Beck acted negligently in failing to obtain necessary permits for hot work, failing to ensure employees were properly trained to perform hot work, and failing to properly dispose of combustible materials. Compl. ¶¶ 23(e), (f), (j). Seneca has since abandoned those theories of negligence. Summ. J. Resp. at 6, ECF No. 23.

(d), (g)–(i). Seneca's negligence per se claim relies on the Virginia Statewide Fire Prevention Code ("Virginia Fire Code"), and standards set by the National Fire Prevention Association ("NFPA"). Seneca alleges that Beck violated thirteen provisions of the Virginia Fire Code and/or NFPA standards.[5] Compl. ¶¶ 32(c)–(d), (f)–(l), (o)–(r).

Seneca disclosed Joseph Boisseau as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2) and this Court's Scheduling Order. *See* Sched. Order ¶ 8, ECF No. 10; Expert Disclosures, ECF No. 12-1. Boisseau is described as "an expert in the field of determining the cause and origin of fires such as the one at issue in this case." Expert Disclosures at 1. Boisseau prepared a report (the "Boisseau Report") discussing his investigation into the fire and concluding that "[t]he probable ignition source was an open flame device" and that "[t]he improper use of the torch to apply roofing material is a potential cause." Boisseau Report at 4, ECF No. 12-2.

Beck's Motion to Exclude contends that Seneca's expert disclosure and the Boisseau Report fail to comply with Rule 26(a)(2) and Seneca should therefore be prohibited from offering Boisseau's opinion at trial. Beck also seeks summary judgment on the grounds that Seneca cannot present adequate expert testimony to establish the elements of negligence and negligence per se. In light of the overlapping arguments made in the two motions, the Court will address both in this Memorandum Order.[6]

---

[5] Seneca's Complaint identified eighteen alleged violations of the Virginia Fire Code and/or NFPA standards, but Seneca has since abandoned five of those allegations. Summ. J. Resp. at 14 n.3.

[6] Seneca responded in opposition to each motion, and Beck replied. Summ. J. Resp.; Summ. J. Reply, ECF No. 27; Mot. Exclude Resp., ECF No. 36; Mot. Exclude Reply, ECF No. 37. Accordingly, both motions are ripe for adjudication and the Court has determined that a hearing is unnecessary. E.D. Va. Loc. Civ. R. 7(J).

## II.    MOTION TO EXCLUDE

**A. Legal Standard**

Beck seeks to prohibit Seneca from using the Boisseau expert opinion at trial. Beck is not challenging the relevance or reliability of Boisseau's expert opinion under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*. *See* Fed. R. Evid. 702; 509 U.S. 579 (1993); *see also* Mem. Supp. Mot. Exclude, ECF No. 30 (lacking citation to *Daubert*, Rule 702, or related Fourth Circuit caselaw). Rather, Beck asserts that Seneca failed to comply with Rule 26(a)'s disclosure requirements. The Court will therefore not engage in a *Daubert* inquiry and will consider only whether Seneca properly complied with Rule 26.

Federal Rule of Civil Procedure 26(a)(2) governs expert disclosures and requires that parties produce a written report for each expert witness they may call at trial. That report must include, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them;" and "the facts or data considered by the witness in forming them."[7] Fed. R. Civ. P. 26(a)(2)(B). "Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Washington v. Mckee*, No. 4:06-cv-6, 2006 WL 2252064, at *2 (E.D. Va. Aug. 3, 2006) (quoting *Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998)) (cleaned up). "A party that fails to provide [the Rule 26(a)(2)(B) disclosures] unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005). Parties who do not comply with Rule 26's

---

[7] Rule 26(a)(2)(B) also requires disclosure of the witness' qualifications, the witness' authored publications, a list of all other cases in which the witness testified as an expert during the last four years, a statement of the witness' compensation, and any exhibits that will be used to summarize or support the witness' opinions. Beck does not dispute that Seneca complied with these requirements.

disclosure requirements are subject to monetary and non-monetary sanctions under Federal Rule of Civil Procedure 37(c), unless the failure to disclose was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).

**B. Analysis**

Here, the Boisseau Report adequately sets forth the "basis and reasons" for the stated opinions, and the "facts or data" considered by Boisseau in forming those opinions. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). The report makes clear that Boisseau identified the roofing torch as the fire's "potential cause" through—essentially—a process of elimination. Boisseau Report at 4. Boisseau indicates that he interviewed Matthew Vakos, interviewed a Beck employee, interviewed someone from the Virginia Beach Fire Marshal's Office, inspected the site (including burn patterns), looked for signs of electrical arcing, and reviewed security video. Boisseau Report at 1–4. After taking those steps, Boisseau concluded that the brazing of the copper lines to move the condenser "could be eliminated" as a cause of the fire, and that electrical causes were also eliminated. *Id.* at 4. The report points to the following factors as support for Boisseau's elimination of the brazing as a potential cause: timing, statements by Vakos and the person who assisted him about using wet rags to absorb heat transfer, "evidence of roofing material in place," "plywood material intact," and "foam piping insulation in place." *Id.* Each of those factors are "bas[e]s and reasons" for Boisseau's conclusion, and Beck has cited no caselaw to support the proposition that Rule 26(a)(2) requires more elaboration. To the extent Beck believes Boisseau's bases and reasons are weak, Beck can highlight those weaknesses on cross-examination.

Beck also contends that the Boisseau Report is deficient because it is not a comprehensive report under guidelines established by the ASTM (formerly the American Society for Testing Materials), known as the ASTM E620 Standard Practice for Reporting Opinions of Scientific or

Technical Experts. The report acknowledges that it does not meet this standard. *See* Boisseau Report at 5. Beck does not cite—and the Court is not aware of—any authority connecting compliance with the ASTM E620 standard and the requirements of Rule 26(a)(2). Beck also takes issue with the fact that the report qualifies Boisseau's opinions about the cause of the fire, stating that the "*probable* ignition source was an open flame device" and that the "improper use of the torch to apply roofing material is a *potential* cause." Boisseau Report at 4 (emphasis added). But again, nothing in Rule 26(a)(2) prohibits experts from qualifying their opinions. "The purpose of Rule 26(a) is to allow litigants to adequately prepare their cases for trial and to avoid unfair surprise." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (internal quotation marks and citation omitted). The Boisseau Report is "sufficiently detailed and complete" that allowing Boisseau to testify in accordance with the report does not frustrate either of those purposes. *See Sharpe v. United States*, 230 F.R.D. 452, 458 (E.D. Va. 2005).

### III. SUMMARY JUDGMENT

#### A. Legal Standard

A party may move for summary judgment on a claim or defense, or part of a claim or defense. Fed. R. Civ. P. 56(a). The district court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is material if "its existence or non-existence would affect disposition of the case under applicable law." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citations omitted).

The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *Wai Man Tom*, 980 F.3d at 1037 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The nonmoving party must then establish that specific, material facts exist which would give rise to a genuine issue. *Id.* In reaching its decision, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "[Q]uestions of negligence . . . and proximate cause are ordinarily questions for the jury." *Smith v. Carpenter*, 92 S.E.2d 275, 277 (Va. 1956); *accord Long v. Ocean Breeze Holdings, LLC*, No. 2:14-cv-484, 2015 WL 12803773, at *5 (E.D. Va. Aug. 28, 2015).

**B. Analysis**

Beck argues that it is entitled to summary judgment because Seneca cannot, as a matter of law, prove each element of a negligence or negligence per se claim. Because this case invokes the Court's diversity jurisdiction and the alleged injury occurred in Virginia, Virginia tort law applies under Virginia's choice of law rules. *See Benedict v. Hankook Tire Co.*, 286 F. Supp. 3d 785, 789 n.1 (E.D. Va. 2018). To prevail on a negligence claim under Virginia law, a plaintiff must establish: (1) the existence of a legal duty; (2) a breach of that duty; and (3) proximate causation resulting in damage. *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003). To prevail on a negligence per se claim, a plaintiff must establish that: (1) the defendant violated a statute that was enacted for public safety; (2) the plaintiff belongs to a class of persons for whose benefit the statute was enacted; (3) the harm that occurred was of the type against which the statute was designed to protect; and (4) the statutory violation was a proximate cause of the plaintiff's injury. *Halterman v. Raddison Hotel Corp.*, 523 S.E.2d 823, 825 (Va. 2000). Beck argues that Seneca is required to, but cannot, present expert testimony establishing the standard of care or causation.

Virginia's "expert testimony rule" applies in "technical negligence cases" where the relevant issues fall "beyond the realm of common knowledge and experience of a lay jury."[8] *Benedict*, 286 F. Supp. 3d at 791 (quoting *Beverly Enters.-Va., Inc. v. Nichols*, 441 S.E.2d. 1, 3 (Va. 1994)). Where the rule applies, expert testimony is required to establish the applicable standard of care, as well as breach and causation. *Benedict*, 286 F. Supp. 3d at 791. "Professionals charged with negligence are ordinarily entitled to be judged by the standard of care prevailing in their profession at the appropriate time and place." *Spainhour v. B. Aubrey Huffman & Assocs., Ltd.*, 377 S.E.2d 615, 619 (Va. 1989). This means that expert testimony on the standard of care should come from "fellow professionals, familiar with the standard, to explain it to the fact-finder." *Id.* The expert testimony rule is commonly applied in medical malpractice and products liability cases. *See, e.g., Perdieu v. Blackstone Family Practice Ctr., Inc.*, 568 S.E.2d 703, 711 (Va. 2002) (medical malpractice); *Gauthreaux v. United States*, 694 F. Supp. 2d 460, 465 (E.D. Va. 2009) (products liability). The rule has, however, been applied in a range of other contexts, including in cases involving engineering, architecture, automotive transmission design, firearms trainers, and museum exhibition designers. *Benedict*, 286 F. Supp. 3d at 791–92 (collecting cases).

There are two exceptions to the expert testimony rule. Expert testimony is not required where "the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." *Nichols*, 441 S.E.2d at 3. For example, while expert testimony would typically be required to establish the standard of care in a medical malpractice case, the Virginia Supreme Court in *Nichols* found that it was not required to establish that a nursing home assistant acted negligently in leaving an elderly patient with a history of choking to eat unattended. *See id.* at 3–

---

[8] "Federal courts sitting in diversity apply state law, i.e., Virginia law, in evaluating whether expert testimony is required in technical negligence cases." *Benedict*, 286 F. Supp. 3d at 791 n.4.

4. In determining whether the expert testimony rule applies, the Court therefore considers the particular theory of negligence advanced by the plaintiff, as well as the profession or skill at issue. The second exception to the expert testimony rule "renders experts unnecessary where standards of conduct 'have ripened into rules of law.'" *Benedict*, 286 F. Supp. 3d at 793 (quoting *Seaward Int'l, Inc. v. Price Waterhouse*, 391 S.E.2d 283, 287 (Va. 1990)).

    1. Standard of Care

Seneca's expert disclosure does not designate an expert who will "set forth the applicable standard of care"—that is, the standard of care for roofers repairing a leak on a commercial building. *See Sharpe*, 230 F.R.D. at 460. As discussed above, Boisseau is "an expert in the field of determining the cause and origin of fires" and neither his report nor Seneca's disclosure forecast expert testimony regarding the standard of care that should apply to Beck's roofing work.[9] Expert Disclosures at 1. It follows that if the expert testimony rule requires Seneca to put forth an expert witness to establish the standard of care, then Seneca's claims cannot survive summary judgment.

    *a. Negligence*

Seneca contends that a standard of care expert is unnecessary because, where roofers are working with an open flame, "the standard of care can be stated bluntly as 'do not start a fire.'" Summ. J. Resp. at 1. But Seneca's argument oversimplifies its particular theories of negligence in this case. Here, Seneca alleges that Beck failed to maintain a "fire safe condition"; take "*appropriate* precautions to avoid igniting combustible material"; "*properly* operate" an open-flame propane torch; "post, utilize, and/or maintain a fire watch for an *appropriate* period of time

---

[9] Seneca also disclosed Matthew Vakos as a fact witness "who may offer expert opinions" as a trained and experienced HVAC technician on "the necessary precautions and safety measures . . . taken before, during, and after his [brazing] work." Expert Disclosures at 1–2. Neither party contends that Vakos' testimony would establish the standard of care that applied to Beck, and the Court does not consider Vakos' potential role as an expert witness in its analysis.

and in the *appropriate* location(s)"; "*properly* store or secure the . . . propane tank and torch"; "*properly* inspect the work area"; or "move or protect fire hazards in the vicinity of the work area." Compl. ¶¶ 23(a)–(d), (g)–(i) (emphasis added). These are not determinations "within . . . the jury's common knowledge or experience." *See Nichols*, 441 S.E.2d at 3.

Terms like "fire safe condition" are terms of art, and the meaning of modifiers like "properly" and "appropriate" are context-specific and clearly implicate professional judgment. A lay juror might be well-equipped to determine what qualifies as an "appropriate precaution" to prevent fire during an outdoor barbecue but likely cannot evaluate "appropriate precautions" for a roofer working with a propane tank and torch. Similarly, while a lay juror might have some ability to identify fire hazards, they would likely not be able to competently define a "vicinity" within which those hazards might catch fire during torch-down roofing. Seneca has not disclosed an expert witness who could clarify the meaning of these technical concepts for the jury, and that omission is fatal to Seneca's negligence claim.[10]

    b. Negligence Per Se

"The doctrine of negligence per se represents the adoption of the requirements of a legislative enactment as the standard of conduct of a reasonable person." *McGuire v. Hodges*, 639 S.E.2d 284, 288 (Va. 2007) (cleaned up). Here, Seneca bases its negligence per se claim on alleged violations of the Virginia Fire Code and standards set by the NFPA. Seneca argues that because

---

[10] Seneca also argues that "Beck has supplied its own standard" as to the negligence claims, based on a safety manual that Beck produced in discovery with fire prevention guidelines for roofers. Summ. J. Resp. at 6 (citing ECF No. 23-2). Seneca suggests that the manual was part of Beck's "training materials." *See id.* at 14. Under Virginia law, "it is well settled that internally promulgated policies cannot serve as the basis of establishing a duty of care supporting a negligence claim." *Warner v. Centra Health, Inc.*, 503 F. Supp. 3d 479, 500 (W.D. Va. 2020). In addition, Seneca has not argued that the safety manual would meet the requirements to establish the standard of care under a negligence per se theory. The guidance presented in the safety manual therefore does not change the Court's analysis.

10

those sources set the applicable standard of care, Seneca does not need an expert witness to further explain the standard. Beck does not contest that the code provisions and standards cited by Seneca were "enacted for public safety," that Seneca "belongs to the class of [plaintiffs] for whose benefit the statute was enacted," or that the fire was "the type" of harm against which the Virginia Fire Code and NFPA standards were "designed to protect." *See Halterman*, 523 S.E.2d at 825 (listing elements of negligence per se).

Instead, Beck argues that the standards cited by Seneca in support of their negligence per se claim are "not self-evident," and that Seneca must therefore present expert testimony to explain them to a lay jury. Summ. J. Reply at 3. The Court agrees with Seneca that, even in technical negligence cases, expert testimony is not always necessary to establish the standard of care for a negligence per se claim. *See Benedict*, 286 F. Supp. 3d at 797–99 (analyzing negligence per se claim, notwithstanding the court's previous finding that the expert testimony rule foreclosed a common law negligence claim). That being said, expert testimony may still be necessary to establish the standard of care set forth in an applicable standard if that standard is not "within the range of the jury's common knowledge and experience." *See Nichols*, 441 S.E.2d at 3 (explaining exceptions to expert testimony rule); *see also Finney v. Clark Realty Cap., LLC*, No. 1:20-cv-93, 2022 WL 303245, at *4 (E.D. Va. Jan. 31, 2022) (denying defendant's motion for summary judgment as to a negligence per se claim based on a Virginia statute, finding that the plaintiffs' expert witness had proffered admissible testimony as to the "relevant professional standards" established by the statute); *Spainhour*, 377 S.E.2d at 619 (finding that expert testimony may not be necessary where negligence claim is based on "binding standards which are not left to the exercise of professional judgment").

11

Some of the alleged violations of the Virginia Fire Code and/or NFPA standards clearly fall outside of the jury's common knowledge and experience. For example, a lay juror cannot be expected to evaluate whether Beck "*appropriately* shield[ed] exposed combustibles" in the hot work area. *See* Compl. ¶ 32(c) (emphasis added). Determining what is "appropriate" is "left to the exercise of professional judgment," even within the Virginia Fire Code and NFPA standards. *See Spainhour*, 377 S.E.2d at 619. Similarly, it is beyond the common knowledge or experience of a lay juror to determine whether Beck "fail[ed] to *properly* inspect the hot work area"; "fail[ed] to use *extreme caution* while installing a torch-applied roofing system"; "fail[ed] to use *caution* while installing a torch-applied roofing system near roof openings, penetrations, and/or flashings"; "perform[ed] hot work . . . without *proper* protection"; "fail[ed] to verify that no combustibles were *at risk* of ignition on the other side of the roof"; or "fail[ed] to take precautions to prevent ignition of combustibles on the opposite side of the roof from where hot work was being performed by relocating the combustibles." Compl. ¶¶ 32(d), (j)–(k), (o)–(q) (emphasis added).[11] Because Seneca has not identified an expert witness who could elaborate on the discretionary language included in these standards, Seneca cannot rely on them to establish negligence per se. The jury can, however, easily determine whether Beck: stored a propane cylinder on the roof; failed to keep combustible materials not less than ten feet from a propane cylinder; left a propane cylinder with a water capacity of greater than 2.7 pounds unattended on the roof of a building frequented by the

---

[11]   Even if Seneca could rely exclusively on the Virginia Fire Code or NFPA standards to set the standard of care, Seneca still must make a showing that Beck violated those standards. *See Steward ex rel. Steward v. Holland Family Props., LLC*, 726 S.E.2d 251, 254 (Va. 2012) (listing elements of negligence per se claim). Without an expert witness to explain to the jury how a roofer would comply with each standard, Seneca cannot make the required showing. *See Frederico v. Lincoln Mil. Hous., LLC*, 127 F. Supp. 3d 623, 644–45 (E.D. Va. 2015) (finding that plaintiffs' negligence per se claim based on Virginia Maintenance Code could survive summary judgment in part because plaintiffs' expert report created dispute of material fact as to whether code was violated).

public during the hours the public normally occupies the building; failed to post a fire watch for two hours after completing torch-applied roofing operations; failed to attach a safety cap to the valve of a propane cylinder when not in use; or failed to provide a fire watch on the side opposite from where hot work was performed. *See* Compl. ¶¶ 32(f)–(i), (l), (r). Each of these alleged acts are discrete, easily understood by an ordinary person, and generally amenable to "yes or no" answers.

For those reasons, Seneca's lack of expert testimony regarding the standard of care is fatal to its negligence claim and to the specific alleged acts of negligence per se enumerated above. The Court need not analyze breach and causation with respect to those claims, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Benedict*, 286 F. Supp. 3d at 797 (quoting *Celotex*, 477 U.S. at 322–23). Beck's Motion for Summary Judgment is therefore granted with respect to the acts of negligence alleged in paragraph 23, and in subparagraphs 32(c), 32(d), 32(j), 32(k), 32(o), 32(p), and 32(q) of Seneca's Complaint.

### 2. Res Ipsa Loquitur

In responding to Beck's summary judgment motion, Seneca indicates that it intends to rely on the *res ipsa loquitur* doctrine, rendering expert testimony on the standard of care unnecessary. The Court finds that Seneca cannot, as a matter of law, proceed under *res ipsa loquitur*. *Res ipsa loquitur* is an evidentiary presumption that allows the jury to draw an inference of negligence based on circumstantial evidence. *See Danville Cmty. Hosp. v. Thompson*, 43 S.E. 2d 882, 887–88 (Va. 1947). The doctrine generally applies in cases where "the instrumentality which caused an injury is within the exclusive possession and control of the person charged with negligence, and such person has, or should have, exclusive knowledge of the way that instrumentality was used,

and the injury would not have ordinarily occurred if it had been properly used." *Id.* at 887. The plaintiff must also show that "the evidence of the cause of the accident is accessible to the defendant and inaccessible to the injured party." *Stein v. Powell*, 124 S.E.2d 889, 891 (Va. 1962). In Virginia, *res ipsa loquitur* has not been "entirely abolished," but "has been limited and restricted to a very material extent." *City of Richmond v. Hood Rubber Prods. Co.*, 190 S.E. 95, 98 (Va. 1937).

*Res ipsa loquitur*, in addition to being generally disfavored, does not apply in this case. The particular "instrumentality" that caused the fire is disputed but is generally presumed to be an open flame device. The record points to two such devices: the roofing torch, which was in Beck's "possession and control," and the torch used to braze the condenser lines, which was not. Seneca claims that the former started the fire, while Beck blames the latter. Regardless of which position bears out at trial, Seneca cannot, as a matter of law, establish that Beck had "exclusive possession and control" over the instrumentality that started the fire. Additionally, even if Beck had exclusive possession and control over the instrumentality, Seneca has not shown that evidence of the cause of the fire is accessible to Beck and inaccessible to Seneca. To the contrary, Seneca insured the building's owner, and Seneca's expert witness was able to access the site of the fire to investigate its cause.

### 3. Causation

Beck also asserts that it is entitled to summary judgment because the Boisseau Report is insufficient to establish the causation element of Seneca's negligence claims. Again, the Court must clarify that Beck has not filed a *Daubert* motion seeking to exclude Boisseau's testimony under Rule 702 of the Federal Rules of Evidence. Instead, Beck generally contends that Boisseau's report—which opines that the "probable ignition source was an open flame device"—does not

14

articulate an opinion regarding the cause of the fire with a sufficient degree of certainty. Boisseau Report at 4. Much of Beck's argument on this point is duplicative of its Motion to Exclude. *See* Summ. J. Reply at 5–9. As the Court found above, the Boisseau Report adequately states the bases and reasons for Boisseau's opinions and is otherwise compliant with Rule 26(a)(2).

In reaching his opinion on causation, the Boisseau Report indicates that Boisseau conducted his investigation "in accordance with" a process established by the National Fire Prevention Association, known as NFPA 921. In tort cases involving fires, courts regularly rely on expert opinions employing the NFPA process. *See, e.g., Tunnell v. Ford Motor Co.*, 330 F. Supp. 2d 731, 738–42 (W. D. Va. 2004). "In broad strokes, a fire investigator complying with [the NFPA 921] will define the problem; collect data; analyze all data collected; develop a hypothesis based on the empirical data and inferences drawn from the data and the investigator's knowledge, training, or experience; test the hypothesis; and, reach a conclusion." *Adell Plastics, Inc. v. Mt. Hawley Ins. Co.*, No. 17-cv-252, 2019 WL 2524916, at *5 (D. Md. June 19, 2019). Beck suggests that Boisseau did not, however, actually employ the NFPA 921 process. Again, while this argument would suggest that Beck is challenging the reliability of Boisseau's methodology and opinions, such a challenge is not before the Court. The Boisseau Report states that its conclusions were reached "in accordance with" the NFPA 921 process, explains its bases and reasoning, and sets forth an opinion regarding the cause of the fire. *See* Boisseau Report at 4. As such, the Boisseau Report's conclusions constitute more than a "mere . . . scintilla of evidence" in Seneca's favor. *Anderson*, 477 U.S. at 252.

The Boisseau Report concludes that an open flame device was the "probable ignition source." Boisseau Report at 4. The report references only two open flame devices—the torch that may have been used to apply roofing material, and the torch used to braze the copper refrigeration

15

lines. Boisseau eliminated the torch used for brazing work, leaving only Beck's torch. By implication, Boisseau concludes that Beck's torch was a "probable ignition source." Viewed in Seneca's favor, Boisseau's conclusions are sufficient to create a genuine issue of material fact as to whether Beck caused the fire through its alleged use of the torch to perform hot work. To the extent Boisseau qualifies his opinions through language like "potential" and "probable," those qualifications can be explored on cross-examination.

The causation analysis differs with respect to Seneca's allegations that Beck failed to keep combustible materials not less than ten feet from a propane cylinder, stored the propane tank on the roof, and failed to attach a safety cap to the valve of the cylinder. *See* Compl. ¶¶ 32(f)–(h), (l). The Boisseau Report does not include any discussion of how simply leaving the propane tank on the roof or near combustible materials could have caused the fire. Instead, it clearly identifies "[t]he improper use of the torch to apply roofing material" as the fire's "potential cause," and states that "[t]he ignition sequence was hot work or open flame igniting the combustible construction." Boisseau Report at 4–5. In order for a negligence claim to go to the jury, "[t]he evidence tending to show causal connection must be sufficient to take the question out of the realm of mere conjecture, or speculation." *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006). Here, Seneca has alleged a causal connection between the propane tank being left on the roof and the subsequent fire but has offered no expert testimony—or other evidence—to elevate that connection beyond "conjecture, guess[,] or random judgment." *Id.* Beck's summary judgment motion is therefore granted with respect to the allegations of negligence per se set out in subparagraphs 32(f), 32(g), 32(h), and 32(l) of Seneca's Complaint.

<u>4. Remaining Issues of Fact</u>

The Court finds that Seneca's remaining claims are well-suited for consideration by a jury. Leaving aside the legal complexities discussed in this opinion, it appears to the Court that this case turns on one core question: Did Beck perform hot work that day, or did it not? Beck claims that no hot work was performed, and that the torch and tank were only brought onto the roof to prepare for the next day. *See, e.g.,* Biggs Dep. at 88:14–88:20, 95:14–95:19, 111:2–111:6. Neither party has offered any witness who actually saw Beck perform hot work. Seneca, however, argues that Beck must have done hot work, because there was roofing material—which would have been applied with a torch—melted around the "scupper" opening where Beck was working. *See* Vakos Dep. at 75:22–79:17. That contention is bolstered by evidence that the torch and tank were connected at the time of the fire, and by Vakos' testimony that he expressed concerns to Beck about leaving the roof open to rain for the night with only tarpaper, and no torched-down material. *See* Biggs Dep. at 91:7–91:8, 104:21–105:1 (discussing connected torch); Vakos Dep. at 70:7–71:1 (recalling conversation between Vakos and Beck employees). The evidence indicating that Beck performed hot work goes beyond a "scintilla." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (quoting *Anderson*, 477 U.S. at 252). The Court cannot answer the core question without weighing that evidence and the credibility of witnesses—neither of which are permissible on a summary judgment motion. *Reeves*, 530 U.S. at 150. Beck's Motion for Summary Judgment is therefore DENIED as to the acts of negligence alleged in subparagraphs 32(i) and (r) of Seneca's Complaint.

## IV. CONCLUSION

For the reasons stated above, Beck's Motion to Exclude Expert Testimony, ECF No. 29, is DENIED, and Beck's Motion for Summary Judgment, ECF No. 11, is GRANTED IN PART and DENIED IN PART.

The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

It is so ORDERED.

/s/
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: July 2, 2025